## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 19-25334-Civ-WILLIAMS/TORRES

DAVID T. FRAZIER,

        Plaintiff,

v.

ANDREW SAUL, Acting Commissioner of
the Social Security Administration,

        Defendant.

_____/

## REPORT AND RECOMMENDATION ON THE PARTIES'
## CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross motions for summary judgment filed by David T. Frazier ("Plaintiff") [D.E. 14] and Andrew Saul, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner") [D.E. 15] on whether the Administrative Law Judge (the "ALJ") properly weighed the evidence presented in reaching his unfavorable decision.   Under the limited standard of review that governs this case, the Court finds that the motions are ripe for disposition and that substantial evidence supports the ALJ's determination.[1]   For the reasons stated below, Plaintiff's motion for summary judgment [D.E. 14] should be **DENIED**, Defendant's motion for summary judgment [D.E. 15] should be

---

[1]    On July 21, 2020, the Honorable Kathleen M. Williams referred the parties' cross motions to the undersigned Magistrate Judge for disposition.   [D.E. 17].

**GRANTED**, and the decision of the ALJ should be **AFFIRMED**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was born on September 28, 1965 and has an associate degree in business administration.   Plaintiff has worked as a gate guard, cleanup worker, construction worker, carpet layer helper, and warehouse worker.   From 2013 until sometime in 2016, Plaintiff worked as a car transporter.   On April 5, 2016, after experiencing sharp pain in his chest, Plaintiff went to Jackson Memorial Hospital and doctors discovered that he had an aortic aneurysm.   The doctors performed surgery the same day.   Prior to the emergency surgery, Plaintiff had a history of coronary artery disease and took lisinopril to treat high-blood pressure, but he ran out of the medication "some time ago."   [D.E. 5, p. 336].   He had also used cocaine for the first time in ten years about three days before the emergency.   [D.E. 5, p. 334].   On April 14, 2016, Plaintiff was discharged with anti-hypertensive medications.

Four days later, Plaintiff applied for disability insurance benefits and supplemental social security income, alleging a disability onset date of April 5, 2016. The Commissioner denied Plaintiff's application at the initial and reconsideration levels.   Plaintiff then requested a hearing before the ALJ that took place on November 2, 2018.   After considering the record and the testimony of a vocational expert ("VE"), the ALJ issued an unfavorable decision on December 4, 2018.

At step one of the five-step sequential process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 5, 2016.   The ALJ found at

2

step two that Plaintiff had the severe impairments of aortic aneurysm and hypertension.   The ALJ then determined that these impairments did not meet any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including listing 4.10 (aneurysm).

Prior to moving to step four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R § 404.1567(b).   The ALJ then proceeded to step four and determined that Plaintiff could perform his past relevant work as a gate guard.   The ALJ relied on the testimony of the VE in making this determination.

Plaintiff then filed this action seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g).   Accordingly, this action is now ripe for disposition.

## II.      STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied.   *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999). "Substantial evidence is more than a scintilla, but less than a preponderance.   It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

In testing for substantial evidence, a court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citing another case). Instead, so long as an ALJ's findings are supported by substantial evidence, a court must defer to the ALJ's decision even if the evidence may preponderate against it. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings."); *Miles*, 84 F.3d at 1400; 42 U.S.C. § 405(g). However, no presumption of validity attaches to the Commissioner's conclusions of law. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). A court also reviews an ALJ's decision to determine whether the correct legal standards were applied. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a hearing before an ALJ is not an adversary proceeding. *Id.* (citing another source).

Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses. *See Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). It is also the responsibility of the Commissioner to draw inferences from the evidence, and those inferences cannot be overturned if they are supported by substantial evidence. *See Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, a court's responsibility is to ensure that the proper legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### III.     ANALYSIS

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   The claimant bears the burden of producing evidence that proves her or she meets this statutory definition.   "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and "[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work."   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir. 1985)).   The steps are followed in order to determine if the claimant is disabled.

An ALJ must first determine whether the claimant is presently employed.   If so, a finding of non-disability is made, and the inquiry ends.   *See* 20 C.F.R. § 404.1520(b).   In the second step, an ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments.   If an ALJ does not make such a finding, then the inquiry ends.   *See id.* at § 404.1520(c).   At step three, an ALJ compares the claimant's impairments with specific impairments under the regulations that require a finding of disability without further inquiry into the claimant's ability to perform other work.   *See Gibson v. Heckler*, 762 F.2d 1516, 1518

(11th Cir. 1985) ("Certain impairments are so severe either when considered alone or in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work.").   If the claimant's impairment meets or equals a listed impairment, the claimant's disability is presumed, and benefits are awarded.   *See* 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work.   If the claimant cannot perform past relevant work, then a prima facie case of disability is established.   An ALJ assesses a claimant's RFC at this stage, based on the other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments.   *See id*. at § 416.945(a)(1).   A claimant's RFC is an administrative finding of fact concerning the claimant's maximum remaining capacity to perform work-related physical and mental activities on a regular and continuing basis despite the functional limitations and environmental restrictions imposed by his or her medically determinable impairment(s).

When making this finding, an ALJ is required to identify the limitations and/or restrictions imposed by the claimant's impairments and then assess his or her work-related abilities on a function-by-function basis.   Only upon the conclusion of this function-by-function analysis may an ALJ express the claimant's RFC in terms of the exertional levels of work, i.e., sedentary, light, medium, heavy, and very heavy.

This leads to step five – the final inquiry – where the burden shifts to the

Commissioner to show that there is other work available in the national economy that the claimant can perform based on the claimant's RFC, work experience, education, and age.   *See id.* at § 404.1520(e)-(f).

On appeal, Plaintiff seeks to remand the ALJ's decision based on five issues, which are whether: (1) the ALJ improperly found that Plaintiff's condition did not meet listing 4.10, (2) the ALJ improperly analyzed the opinion evidence, (3) the ALJ reached an incomplete residual RFC assessment, (4) the ALJ improperly discounted Plaintiff's subjective symptom allegations, and (5) the Appeals Council erred in not finding a newly submitted assessment material.   We consider each argument in turn.

### A.   *The ALJ Properly Found that Plaintiff's Condition Did Not Meet Listing 4.10*

At step three of the sequential evaluation process, the ALJ "consider[s] the medical severity of [a claimant's] impairment."   20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii).   If the claimant has an impairment that meets or equals one of the listings in appendix 1 of 20 C.F.R. Part 404, Subpart P and meets the duration requirement, the ALJ will find that the claimant is disabled.   The listings "are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect."   *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990).   "Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results."   *Id.* at 530.

For a claimant to show that his impairment matches a listing, he must meet *all* of the specified medical criteria."   *Id.* (emphasis in original).   "An impairment

that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* (citations omitted).   The burden is on the claimant to show that his or her impairment or combination of impairments meets or medically equals a listed impairment for a period of twelve continuous months.   *See* 20 C.F.R. §§ 404.1505(a), 416.905(a).

Listing 4.10 describes an aneurysm of aorta or major branches, due to any cause with dissection not controlled by prescribed treatment.   *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.10.   An aneurysm is dissecting "when the inner lining of the artery begins to separate from the arterial wall."   *Id.* at § 4.00H6.   A dissection is "not controlled when a claimant has persistence of chest pain due to progression of the dissection, an increase in the size of the aneurysm, or compression of one or more branches of the aorta supplying the heart, kidneys, brain, or other organs."   *Id.*   An aneurysm with dissection "can cause heart failure, renal (kidney) failure, or neurological complications."   *Id.*

Here, the ALJ determined that Plaintiff had an aortic aneurysm and discussed the description for listing 4.10.   However, the ALJ determined that Plaintiff's aneurysm did not meet the criteria in listing 4.10 because it was not "accompanied by the requisite elements of severity called by the listings."   [D.E. 5, p. 23].   The ALJ did not detail the specific evidence that led him to this conclusion but noted that it was based on the objective evidence.

Plaintiff's first point of contention is that he successfully provided medical evidence demonstrating that his aortic dissection meets listing 4.10.   Plaintiff points

8

to the evidence that his aneurysm had both type A and B dissection.   The dissection then resulted in renal failure.   Plaintiff concedes that he failed to take his medication at times, but argues he took it for the eight months after his emergency surgery, which indicates his medication failed to control the dissection.   With this evidence established, Plaintiff concludes the ALJ erred by not specifically explaining which criteria of listing 4.10 Plaintiff failed to demonstrate.

In response, the Commissioner argues that the Eleventh Circuit does not require an ALJ to explain why a claimant's impairments do not meet a listing when the determination is implicit in the ALJ's decision.   The Commissioner asserts the determination was implicit because the record shows Plaintiff did not complain of persistent chest pain, there was no evidence of compression of aortic branches, and after his type A dissection was repaired by surgery, the size of his aneurysm did not increase.   In addition, his type B dissection did not require surgery and both dissections were fully stable.   Therefore, the aneurysm did not meet the criteria of listing 4.10 for a period of at least 12 months.

We first agree with the Commissioner that an ALJ's determination regarding a listing may be implicit.   *See Gordon v. Berryhill*, 2017 WL 3781280, at *3 (N.D. Ala. Aug. 31, 2017) ("The ALJ did not specifically discuss Listing 4.10, but the ALJ's examination of the record demonstrates that the ALJ implicitly found that Ms. Gordon does not meet or equal Listing 4.10.") (citing *Flemming v. Comm'r of Soc. Sec. Admin.*, 635 F. App'x 673, 676 (11th Cir. 2015); *Hartnack v. Colvin*, 2016 WL 11543426, at *2 (S.D. Fla. July 27, 2016) ("[W]hile the ALJ must consider the Listings

9

in making its disability determination, 'it is not required that the [ALJ] mechanically recite the evidence leading to her determination.'") (quoting *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)).   Although the ALJ did not cite specific evidence when making his determination, the ALJ discussed in detail the criteria of listing 4.10 when making his determination.   He also mentioned that Plaintiff's type A dissection was corrected with surgery and his type B dissection did not require surgery in other parts of his decision.   This establishes that the ALJ did not err because his determination regarding listing 4.10 was properly implicit.   *See Flemming*, 635 F. App'x at 676 (finding the ALJ's determination was adequately implicit when "the ALJ specifically stated that she considered the listings under Listing 12.00").

With that issue resolved, we look to the record to see if there is substantial evidence to support the ALJ's determination regarding listing 4.10.   Upon review, there is substantial evidence.   About a month after Plaintiff's type A dissection was repaired by surgery, Plaintiff had a consultative examination with Dr. Hector Meruelo.   Dr. Meruelo opined that Plaintiff's dissection was corrected through surgery and that his hypertension was only borderline and uncomplicated. Subsequently, a vascular surgery consultation and radiology examination found no further surgical intervention was required to treat Plaintiff's type B dissection because there was no evidence of expansion of aortic dissection.

In addition, there is substantial evidence in the record that shows he did not have persistent chest pain nor compression of one or more branches of the aorta.

10

Plaintiff did present the opinion of one of his treating physicians, Dr. Mark Keller, that found that his aneurysm had increased in size as of December 2016.   But at this stage of consideration, we do not reweigh the evidence.   *See Winschel*, 631 F.3d at 1178.   Moreover, this evidence alone does not satisfy Plaintiff's burden of showing the impairments met the criteria of listing 4.10 for at least 12 months.   Thus, there is substantial evidence that Plaintiff's aneurysm did not meet the criteria of listing 4.10 for a period of at least 12 months.

### B.   *The ALJ Properly Evaluated the Opinion Evidence*

Next, Plaintiff asserts that the ALJ did not provide good cause for discounting Dr. Keller's opinion, and improperly gave great weight to the opinion of Dr. Meruelo. An ALJ evaluates several factors when determining how much weight to accord a medical opinion, including: (1) whether the physician has examined the claimant, (2) the length, nature, and extent of a treating physician's relationship with the claimant, (3) the medical evidence and explanation supporting the physician's opinion, (4) how consistent the physician's "opinion is with the record as a whole," and (5) the physician's specialization.   20 C.F.R. §§ 404.1527(c), 416.927(c).   These factors apply to both examining and non-examining doctors.   *See id.*   Absent good cause, an ALJ must give a treating[2] physician's opinion substantial or considerable weight.   *See id.* (noting that more weight is generally given to opinions from treating sources); *see also Winschel*, 631 F.3d at 1179.

---

[2]     A treating source is defined as the claimant's "own physician . . . who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."   20 C.F.R. § 404.1502.

Good cause exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* Absent such a statement, a reviewing court cannot determine whether the ultimate decision is supported by substantial evidence. *See Hudson v. Heckler,* 755 F.2d 781, 786 (11th Cir. 1985) (citation omitted). However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision" enables the court "to conclude that the ALJ considered [the claimant's] medical condition as a whole." *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

In other words, "even if the ALJ erroneously failed to explicitly assign weight to and discuss every aspect of [a doctor's] opinion, this error [is] harmless because it is still clear that the ALJ's rejection of the portions of [the doctor's] opinion that are inconsistent with the ALJ's ultimate conclusion was based on substantive evidence." *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014); *see also Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987 (11th Cir. 2015) (holding that "[a]lthough the ALJ never stated the weight given to [a doctor's] treatment notes, the ALJ discussed the content of [the] notes, showing that the ALJ considered and gave weight to this medical evidence.").

Here, there is substantial evidence that the ALJ had good cause to discount

the opinion of Dr. Keller.   First, the ALJ discussed how Dr. Keller's opinion was conclusory because Dr. Keller provided little explanation of the evidence he relied on in forming it.   Second, the ALJ found the opinion to be inconsistent with the stronger medical evidence that showed Plaintiff had unremarkable hypertension levels with proper medication management.   The ALJ thus has enabled the Court "to conclude that the ALJ considered [the claimant's] medical condition as a whole" when discounting Dr. Keller's opinion.   *See Dyer*, 395 F.3d at 1211.

Plaintiff's argument that substantial evidence is lacking to show the opinion was conclusory fails.   Dr. Keller provided his opinion through a check-the-box RFC questionnaire, with a few barely legible lines that repeated Plaintiff's own subjective statements, cited Plaintiff's diagnoses, and noted that his opinion was based on "historical evidence" without more explanation.   This supports the ALJ's conclusion that the opinion was conclusory.   Moreover, as previously discussed, the ALJ discussed objective medical evidence that was inconsistent with Dr. Keller's opinion. Therefore, there is substantial evidence that the ALJ had good cause to discount Dr. Keller's opinion because it was conclusory and not well-supported by objective evidence.   *See Crawford*, 363 F.3d at 1159 (declaring that doctor's medical opinion was rightfully discounted when it was primarily based on the claimant's subjective complaints).

Plaintiff also argues that the ALJ erred by according great weight to Dr. Meruelo's opinion.   Dr. Meruelo's consultative examination of Plaintiff occurred about a month after Plaintiff's surgery.   To be begin with, the ALJ only gave great

13

weight to two opinions of Dr. Meruelo: (1) that Plaintiff's acute aortic dissection was corrected through surgery and (2) that his hypertension was only borderline and uncomplicated.   The ALJ gave these two opinions great weight because the doctor had an opportunity to observe Plaintiff and his findings were consistent with the objective evidence, including Plaintiff's benign physical examinations and his history of hypertensive emergencies due to his medication non-compliance.   The ALJ thus properly evaluated Dr. Meruelo's opinion by noting he personally examined Plaintiff and that the doctor's opinion was consistent with the objective medical evidence.   *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

Plaintiff contends that the ALJ failed to account for the evidence that showed Plaintiff's aortic dissection expanded after Dr. Meruelo's examination, which is supported by the opinion provided by Dr. Keller and Plaintiff's subjective symptoms. For the same reason the ALJ had good cause to discount Dr. Keller's opinion, Plaintiff's argument here falls flat.   For instance, the ALJ cites that Plaintiff's hypertension was controllable with medication and only flared up when Plaintiff did not take his medication.   And in December 2016 and July 2017, respectively eight and fifteen months after Plaintiff's surgery, a vascular surgery consultation and radiology examination found no further surgical intervention was required to treat Plaintiff's type B dissection because there was no evidence of expansion of aortic dissection.   While there is some inconsistent evidence between Dr. Keller's and Dr. Meruelo's opinions, and Dr. Keller's opinion came later in October 2017, the ALJ has provided a record that supports his conclusion why Dr. Meruelo's opinion should be

accorded greater weight.

### C.   *The RFC Finding is Supported by Substantial Evidence*

An RFC is what a claimant can still do despite his or her limitations and is an assessment based on all the relevant evidence in the record.   An ALJ often considers opinions from medical sources when determining a claimant's RFC because "the final responsibility for deciding these issues is reserved for the Commissioner."   20 C.F.R. § 416.927(e)(2).   The reason the Commissioner is tasked with this determination is because "[g]iving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."   SSR 96-5P, 1996 WL 374183, at *2 (S.S.A. July 2, 1996); *see also Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors.").

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess . . . her work-related abilities on a function by function basis . . . [o]nly after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007) (citation omitted).   The Social Security regulations mandate a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and

15

describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96-8p, at *6. As such, "[t]he ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence." *Freeman*, 220 F. App'x at 960 (citing *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

In making this determination, "[w]e do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole." *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (citing *Dyer*, 395 F.3d at 1211) (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision")); *see also Gully v. Astrue,* 2009 WL 1580416, *3 (M.D. Ala. 2009) (finding that an ALJ's failure to "more specific[ally] and explicit[ly] set forth his findings with respect to a claimant's functional limitations and work-related abilities on a function-by-function basis is excusable where it is apparent the ALJ did consider all of the evidence.") (citing *Freeman*, 220 F. App'x at 959-60) (alteration in original).

It is Plaintiff's burden to produce evidence supporting his claim that he could not perform light work. *See Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 852 (11th Cir. 2018) (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) and 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3)) ("A claimant bears the burden of proof for establishing the existence of a disability and must produce evidence in support of

a claim, including at the RFC stage").   Plaintiff attempted to meet this burden by testifying about his complaints of pain and presenting the opinion of Dr. Keller, which the ALJ considered in his RFC determination. The ALJ, however, properly discredited this evidence.[3]   And the ALJ did not have a duty to rely on the medical opinion of Dr. Keller.   *See* 20 C.F.R. § 404.1546(c); *Robinson*, 365 F. App'x at 999 (holding that the regulations require an RFC determination to be made by the ALJ at the hearing level).

In addition, the ALJ gave partial weight to DDS medical consultant Bettye Stanley DO who found that Plaintiff was limited to a full range of medium exertion. Plaintiff asserts that the ALJ did not consider Dr. Stanley's opinion, but this is a clear mischaracterization of the ALJ's decision.   In the decision and under the heading "After careful consideration of the entire record, I find that the claimant has the [RFC] to perform the full range of light work . . .", the ALJ stated "As for the opinion evidence, I give partial weight to [Dr. Stanley] who opined the claimant is limited to a full range of medium exertion."   [D.E. 5, p. 25].   The ALJ therefore clearly considered this evidence in his RFC determination.   The ALJ also discussed that Plaintiff's hypertension was treatable with medication and that the evidence showed Plaintiff's dissection was controlled.   Because Plaintiff failed to establish that he could not perform the full range of light work and the record as a whole showed the ALJ had substantial evidence supporting his RFC determination, we do not find

---

[3]     We address why Plaintiff's subjective complaints were properly discredited in Section D of this R&R.

reversible error in the RFC determination.

Before we move to Plaintiff's next primary argument, Plaintiff also asserts that the ALJ improperly failed to consider Plaintiff's medication side effects in the RFC determination. Specifically, Plaintiff testified that it takes him two hours to get going in the morning because his medication causes him to be dizzy and nauseous until he has time to eat and have some tea. This argument is unpersuasive for a few reasons. First, Plaintiff fails to elaborate how taking two hours to get going in the morning is probative in proving that Plaintiff cannot perform light work. *See Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (finding that the ALJ must explain the weight he afforded to "obviously probative exhibits") (quoting *Cowart*, 662 F.2d at 735). Second, the ALJ does not need to give credence to Plaintiff's subjective allegations nor reference every piece of evidence in his decision. *See Dyer*, 395 F.3d at 1211.

### D.   *The ALJ Properly Evaluated Plaintiff's Subjective Symptoms*

When a claimant attempts to establish a disability based on testimony of symptoms, the claimant must show "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted).

If an ALJ discredits a claimant's subjective testimony, then the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225. "While an adequate credibility finding need not cite particular phrases or formulations[,] broad findings that a claimant lacked credibility . . . are not enough . . . ." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995); *see also* SSR 96-7P, 1996 WL 374186, at *2 (S.S.A. July 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

When evaluating the credibility of a claimant's reports of the severity of her or his condition, an ALJ may examine the extent to which the claimant has sought medical treatment.  SSR 96-7p, 1996 WL 374186, at *7.  An ALJ may also consider whether test results in medical records reveal normal findings.  *Brown v. Comm'r of Soc. Sec.*, 680 F. App'x 822, 826 (11th Cir. 2017) (finding that evidence supported the ALJ's determination that the claimant was only partially credible where no physician suggested claimant could not work, physicians reported mostly normal conditions, MRI scans were normal, doctors recommended conservative treatments, and claimant could engage in a range of activities).  Moreover, an ALJ may consider a claimant's daily activities when making a credibility finding.  *See* 20 C.F.R. § 404.1529(c)(3).  When examining daily activities, an ALJ must consider the record as a whole.  *See Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (faulting

Appeals Council's finding that claimant's "daily activities . . . have not been significantly affected" when the Appeals Council "ignored other evidence that her daily activities have been significantly affected"). This means, for example, that participation in everyday activities of short duration will not prevent a claimant from proving disability. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).

Here, Plaintiff testified that he "has to walk slowly and gets stiff and has spasms after about 25 yards; he can only stand for ten minutes at a time; he has chest pains and stiffness with temperature changes; he can only sit for 30 minutes before he has to change position; he can only lift about ten pounds; he wakes up with cramps; he gets winded from taking a shower or doing laundry; he sometimes needs help getting to the bathroom; and he can feel drained after five minutes of activity at work." [D.E. 14].

In evaluating Plaintiff's testimony, the ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the objective medical evidence. Plaintiff, on the other hand, argues that the objective evidence is not inconsistent with his subjective symptoms. We disagree as there is substantial evidence supporting the ALJ's conclusion.

The ALJ cited evidence that Plaintiff's testimony was inconsistent because Plaintiff's hypertension and aortic aneurysm could cause some function limitation but not to the extent alleged. For example, and as previously discussed, the ALJ

20

discussed that Dr. Meruelo found that Plaintiff's surgery to repair his aortic dissection went well and Dr. Stanley found that Plaintiff could handle medium exertion.   And results from other evaluations found no evidence of enlargement and only conservative medication treatment was recommended, which was successful when followed.

In fact, the ALJ outlined how most of Plaintiff's medical emergencies were the result of his medication non-compliance.   This includes Plaintiff first being only prescribed anti-hypertensive medications after his surgery.   Then in December 2016, after experiencing abdominal pain and high blood pressure, Plaintiff was found to be non-compliant with his medication and his high blood pressure was controlled after four days of medication management.   A month later, Plaintiff once again had abdominal pain and high blood pressure after not taking his medication, which was similarly alleviated after getting his blood pressure under control with medication. The same set of facts occurred again during an incident in July 2017.

In sum, the ALJ concluded that the objective evidence "show a two-year history of medication non-compliance that resulted in hypertensive emergencies swiftly controlled by medications.   In each occasion, the claimant was treated with mere medication management and recommended to follow his medication regiment." [D.E. 5, p. 25].   Therefore, there is substantial evidence that the ALJ properly discounted Plaintiff's testimony because of the objective evidence and his symptoms were treatable.   *See Wilson*, 284 F.3d at 1225-26 (finding that an ALJ is not required to accept a claimant's subjective allegations of pain/symptoms when inconsistent with

the medical record).

In a similar vein, Plaintiff argues that the ALJ committed reversible error because he failed to adequately investigate the reasons for Plaintiff's medication non-compliance. Plaintiff contends that he failed to take his medication because of financial hardship, which is a good reason to not take medication. *See Dawkins v. Bowen*, 848 F.3d 1211, 1213 (11th Cir. 1988) (finding that poverty is a good reason to not follow prescribed medical treatment."). Plaintiff relies on *Dawkins* to support this argument. In *Dawkins*, the claimant testified at the administrative hearing that she was unable to take her prescribed medication because she could not always afford to refill her prescription. *Id.* at 1213. In denying benefits, the ALJ relied "primarily if not exclusively" on evidence pertaining to the claimant's noncompliance with the prescribed medical treatment. *Id.* at 1212. On appeal, the Eleventh Circuit reversed and remanded the case, concluding that because the ALJ found that claimant was not disabled was "inextricably tied to the finding of noncompliance," the ALJ erred by failing to consider the claimant's ability to afford the prescribed medical treatment. *Id.* at 1214.

In response, the Commissioner relies on *Ellison v. Barnhart*, 355 F.3d 1272 (11th Cir. 2003). In *Ellison*, the Eleventh Circuit distinguished the facts in *Dawkins* and held that it is not reversible error if an ALJ fails to consider the claimant's ability to afford medication if the medication non-compliance was not the primary reason for the ALJ's decision to deny benefits. *Id.* at 1275. With this principal in mind, the Eleventh Circuit found that the ALJ did not primarily rely on medication non-

compliance because the ALJ's decision was based primarily

> on the facts that (1) Ellison worked for several years in spite of his impairments, and (2) Ellison's use of alcohol aggravated his seizure condition. Moreover, as the ALJ expressly stated, he based his finding of "not disabled" on testimony of a VE and Ellison's RFC, age, educational background, and work.

*Id.*; *see also Sugarman v. Berryhill*, 2017 WL 4868809, at *5 (S.D. Fla. Oct. 27, 2017) (affirming the ALJ when the ALJ based his denial primarily on (1) Plaintiff's report to his doctors that he had worked three separate jobs during the time he claimed he suffered from a disability, and (2) there was no indication by any treating physician that that Plaintiff was unable to work as a result of his claimed medical conditions). The Commissioner thus argues the ALJ did not commit reversible error because the ALJ also relied on Plaintiff's benign physical examination findings and opinion evidence when discounting Plaintiff's testimony.

In other words, both Plaintiff and the Commissioner ask us to evaluate if Plaintiff's medication non-compliance was the primary reason supporting the ALJ's decision to deny benefits. If it was, the ALJ committed reversible error; if it was not, substantial evidence still supports the ALJ's decision. We find, however, that an answer to this question is not required under the facts of this case. In both *Dawkins* and *Ellison*, the claimants testified that they were currently *not* taking their medications. Here, Plaintiff testified that he was currently taking his medication and discussed the side effects of taking it in detail. Accordingly, the ALJ had no duty to inquire about Plaintiff's financial situation because there was no evidence of current medication non-compliance.

.

### E.     *The Appeals Council did not Err*

Plaintiff last urges us to find that the Appeals Council committed legal error by finding that a physical residual functional capacity assessment from Dr. Nicolas Brozzi was not "new and material."   The Appeals Council specifically stated:

> You submitted a Physical Residual Functional Capacity Assessment from Mark Keller, M.D., dated June 21, 2018 and a referral from Dr. Keller dated October 12, 2018 (9 pages). This evidence is not new because it is a copy of Exhibit 15F, pages 1-8 and 10. We did not exhibit this evidence. You also submitted a Physical Residual Functional Capacity Assessment from Nicolas Brozzi, M.D., dated July 25, 2016 (8 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.

[D.E. 5, p. 7].

A claimant may present new evidence at each stage of the administrative process, including to the Appeals Council, if the evidence is new, material, and relates to the period on or before the date of the ALJ's decision.   *Sorter v. Social Sec. Admin., Comm'r*, 773 F. App'x 1070, 1072 (11th Cir. 2019) (citing 20 C.F.R. §§ 404.970, 416.1470; *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1261 (11th Cir. 2007)).   "And although the Appeals Council has discretion to deny review of an ALJ's decision, it must consider 'new, material and chronologically relevant' evidence when deciding whether to grant a claimant's request for review."   *Id.* (citing *Washington v. Comm'r of Soc. Sec. Admin.*, 806 F.3d 1317, 1320 (11th Cir. 2015)).   The Appeals Council's denial of review is subject to judicial review.   *Washington*, 806 F.3d at 1321.   A reviewing court must consider whether the new evidence renders the denial

24

of benefits erroneous.   *Ingram*, 496 F.3d at 1262.

The assessment from Dr. Brozzi was about three months after Plaintiff's surgery.   Dr. Brozzi stated that Plaintiff "is [status post] type A aortic dissection repair, physical activity at this time should me mild, no extreme exercise . . . ."   [D.E. 5, p. 84].   Dr. Brozzi thus indicated Plaintiff should lift and carry less than 10 pounds, stand/walk less than 2 hours and sit less than 6 hours in an 8-hour workday. Plaintiff argues Dr. Brozzi's assessment is new and material because it shows that Plaintiff is able to perform light work and corroborates Dr. Keller's opinion from October 2017.   According to Plaintiff, if both opinions had been in the record before the ALJ, the regulations would have guided that they be given substantial, if not controlling weight.

Under our limited standard of review, we do not agree that there is a reasonable probability that Dr. Brozzi's assessment would have changed the ALJ's decision to a favorable one for Plaintiff.   The assessment is from July 25, 2016 while Plaintiff was still physically recovering from surgery.   Because the ALJ relied on future physical examinations that showed improvement and that his symptoms were controllable with medication, Dr. Brozzi's assessment would not likely change the ALJ's decision.

As noted above, the Court's limited standard of review does not allow for re-weighing the evidence; instead, our inquiry is limited into whether or not substantial evidence in the record as a whole can support the ALJ's findings.   *See Richardson*, 402 U.S. at 401; *Winschel*, 631 F.3d at 1178; *Kelley*, 185 F.3d at 1212.   The Court

therefore finds that the ALJ's conclusions are supported by substantial evidence. For these reasons, Plaintiff's motion for summary judgment [D.E. 14] is **DENIED** and Defendant's motion for summary judgment [D.E. 15] is **GRANTED**.

## IV.    CONCLUSION

Substantial evidence supports the ALJ's findings as noted in his unfavorable decision.    The ALJ's conclusion applied proper legal standards and any errors therein did not prejudice Plaintiff and were harmless.    For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff's motion for summary judgment [D.E. 14] be **DENIED**, that Defendant's motion for summary judgment [D.E. 15] be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.    Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.    28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 25st day of

August, 2020.

/s/ Edwin G. Torres
EDWIN G. TORRES
United States Magistrate Judge